## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LEAR AUTOMOTIVE DEARBORN, INC.
and LEAR CORPORATION,

      Plaintiffs,                             Case No. 04-73461
                                             Hon. Gerald E. Rosen

v.

JOHNSON CONTROLS, INC. and
JOHNSON CONTROLS INTERIORS LLC,

      Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION
## TO COMPEL PRODUCTION OF NEWLY DISCOVERED DOCUMENTS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____January 10, 2011_____

PRESENT:  Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

By motion filed on October 20, 2010, Defendants Johnson Controls, Inc. and

Johnson Controls Interiors LLC (collectively "JCI") seek an order authorizing the use in

this case of documents produced by Plaintiffs Lear Automotive Dearborn, Inc. and Lear

Corporation (collectively "Lear") in a related suit pending in Illinois, *Chamberlain*

*Group, Inc. v. Lear Corp.,* No. 05-3449 (N.D. Ill.) (the "Illinois litigation").  In JCI's

view, the materials produced by Lear in the Illinois litigation should also have been

produced by Lear in the present suit in accordance with a party's duty under Fed. R. Civ.

P. 26(e)(1)(A) to supplement its discovery disclosures.  In response, Lear contends that

the materials in question need not be produced because (i) JCI's motion to compel is

untimely, (ii) a protective order entered in the Illinois litigation bars the use of the

documents in this case, and (iii) the materials are not relevant to any issue to be litigated

at the forthcoming trial.  As discussed briefly below, the Court finds that the documents at

issue should be produced to JCI and made available for its use in this case.

In arguing that JCI's motion is untimely, Lear first notes that the discovery period

in this case has long since been closed, and that, under this Court's scheduling order, a

party who wishes to seek the Court's intervention in a discovery dispute must do so

within 14 days after the dispute arises.  It follows, as Lear correctly observes, that JCI

cannot seek relief unless it is able to identify some sort of continuing obligation that Lear

has breached by failing to produce the materials at issue, such that JCI's motion could be

construed as a timely challenge to Lear's purported breach of an obligation that survived

the close of discovery several years ago.  Yet, in an effort to identify a source of Lear's

obligation to produce the documents in question, JCI points to four document requests

served during discovery that elicited only objections from Lear, and no documents

whatsoever.  Against this backdrop, Lear argues that any challenge JCI wished to pursue

arising from Lear's objections and lack of production should have been raised within 14

days of this lack of production, and not years later.

As JCI points out, however, Lear's timeliness challenge fails to recognize the

nature and significance of one particular objection asserted by Lear in response to JCI's

document requests.  In two of its requests, JCI sought the production of documents

2

referring or relating to the "reasonable royalty" theory of damages Lear is pursuing in this case.  In response, Lear objected that JCI's document requests "call[ed] for Lear to predict the methodology to be employed by its damages expert prior to the dates in the Scheduling Order related to submission of damages expert reports."  (*See* Lear's Response, Ex. B, Plaintiffs' Responses to Requests for Production at 23, 25.)  As JCI correctly observes, this objection was based "on prematurity grounds," (JCI's Reply Br. at 3), evidencing Lear's position that it could not say whether a given document referred or related to its "reasonable royalty" theory of damages until its damages expert had an opportunity to prepare a report setting forth his methodology for computing these damages.

Despite this objection, then, once Lear's damages expert actually prepared his report, Lear had an obligation to timely produce any and all documents that referred or related to the reasonable royalty computed by this expert and the methodology used by the expert in making this calculation.  Specifically, Lear had a duty to make a supplemental disclosure upon learning that its earlier response to JCI's document request was "in some material respect . . . incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)(A).  Assuming that the documents now at issue refer or relate to the reasonable royalty determined by Lear's expert or the analysis underlying his expert opinion on this subject,[1] a duty arose for Lear to produce these documents, because its objection that it could not

---

[1]This question of relevance is addressed below.

3

"predict the methodology to be employed by its damages expert" was no longer valid.

And, of course, JCI could not have known about Lear's purported failure to make a

required supplemental disclosure until Lear produced these documents in the Illinois

litigation.[2]  It follows that JCI's present motion is not barred by this Court's rule requiring

that motions to compel be brought within 14 days after a discovery dispute arises.

Next, Lear argues that JCI's effort to compel production of the documents at issue

— and, indeed, even its filing of the present motion — constitutes improper "use" of

these documents, in violation of a protective order entered in the Illinois litigation that

prohibits the receiving party's use of confidential materials for purposes other than in

connection with that litigation.  This contention not only lacks merit, but is utterly

frivolous.  Nothing in JCI's present motion could be construed as JCI's unilateral "use" in

this suit of documents produced by Lear in the Illinois litigation subject to a protective

order.  Rather, JCI has appropriately come to this Court for a determination whether Lear

has breached an obligation to produce these documents in response to a request for

production made during the discovery period.  In the event that the Court determines that

the documents are subject to production — a question addressed below — Lear can

hardly contend that its obligation to do so is defeated by its production of these same

documents subject to a protective order in other litigation.  While the protective order in

the Illinois litigation limits JCI's use of materials produced by Lear in that case and

---

[2]JCI is one of the two plaintiffs in the Illinois litigation, and at least one of the attorneys
who represents JCI in the Illinois litigation is also representing JCI in the present case.

4

designated as confidential, it does not alter or diminish Lear's obligation in ***this*** case to provide discovery in response to appropriate document requests and in accordance with its duty to supplement, even where this entails the production of materials that were produced in the Illinois litigation subject to a protective order.  Thus, the Court emphatically rejects Lear's attempt to use the protective order in the Chicago litigation as a shield against judicial scrutiny of Lear's compliance with its discovery obligations in this case.

Finally, Lear questions the relevance of the materials in question to the issues to be litigated at the forthcoming trial.[3]  As pertinent here, the documents feature assertions made to or by Lear representatives as to the rate of compatibility Lear sought to achieve — or was told by automobile manufacturers it needed to achieve — between Lear's universal garage door opener product and the garage door opener units in the marketplace.  Some of these documents, in particular, seemingly suggest that the automakers required Lear to achieve a 90-percent rate of compatibility.  Yet, in formulating his opinion on damages and computing a reasonable royalty, Lear's damages expert, Joseph Gemini, stated in his June 25, 2010 supplemental expert report that his "understanding from analyzing information provided [to him] is that it was critical to the OEM automobile manufacturers to have a product that was 100% compatible," and that

---

[3]In order to assess the relevance of these materials, the Court requested that Lear produce a copy of the documents for an *in camera* review.  Lear promptly complied with this request, through a production accompanied by a letter in which Lear's counsel further explained why, in Lear's view, these materials are not relevant.

"[b]oth JCI and Lear recognized that being 100% compatible was important [to] the automobile manufacturers."  (*See* Lear's Response to JCI's Motion to Strike Testimony of Lear Expert Joseph Gemini, Ex. A, Gemini 6/25/2010 Suppl. Report at 8-9.)  In JCI's view, the documents at issue call into question the analysis of Lear's damages expert, as they seemingly undermine his premise that the automakers were insisting upon 100 percent compatibility between JCI's universal garage door opener product and the existing universe of garage door opener units.

In challenging the relevance of these documents, Lear first observes that the pertinent issue here, for purposes of computing a reasonable royalty, is JCI's view in the relevant time frame (the late 1990's) as to the necessity to achieve 100 percent compatibility.  Because the documents at issue date from 2004, 2005, and 2009, and reflect only Lear's understandings as to the required degree of compatibility, Lear argues that these documents shed no light on JCI's understandings and state of mind several years earlier.  As JCI observes, however, the courts have recognized that evidence post-dating the time period of the "hypothetical negotiation" upon which a reasonable royalty is determined "can inform the damages calculation."  *Lucent Technologies, Inc. v. Gateway, Inc.,* 580 F.3d 1301, 133 (Fed. Cir. 2009).  Indeed, the claim of relevance is stronger here, where the point of contention is not what the parties themselves believed, but what they were being told by the automobile manufacturers.  While Lear certainly may attempt to persuade the trier of fact that the automakers insisted upon 100 percent compatibility in the late 1990's but then relaxed this requirement over the next several

6

years — or, alternatively, that regardless of the automakers' actual demands, JCI would have believed that 100 percent compatibility was necessary as it entered into a hypothetical negotiation in the late 1990's — such matters go only to the weight of the evidence, and do not warrant its wholesale exclusion on grounds of relevance.

Lear further challenges the relevance of the documents at issue by contending that they address a different sort of "compatibility" from the 100 percent compatibility referenced by Lear's damages expert. In particular, Lear contends that the 90- and 95- percent figures in the documents refer to the "intrinsic" compatibility of Lear's universal garage door opener system with existing garage door opener units, while the opinion of its expert rests upon a purported requirement of 100 percent compatibility achieved through a combination of "intrinsic" compatibility and an add-on receiver or "box on the wall." Again, however, this is simply Lear's preferred reading of these documents, and it is up to the trier of fact to decide whether (as Lear would have it) these materials are wholly consistent with the analysis of Lear's damages expert, or whether (as JCI contends) these documents undermine Lear's theory of damages.

It remains only to determine the appropriate relief to be granted to JCI in light of Lear's failure to produce these documents. First, JCI asks that Lear be compelled to produce these documents to JCI in this litigation, subject to the protective order entered in this case, and accompanied by any other materials in Lear's possession that are responsive to JCI's above-referenced requests for documents referring or relating to the reasonable royalty claimed by Lear and identified by its damages expert. JCI further

7

requests leave to amend its pre-trial exhibit list to include these materials, and to provide these documents to its own damages expert so that he may, if necessary, address them in a supplemental report.  The Court agrees that this requested relief is reasonable and appropriate, and therefore orders (i) that Lear must produce the documents at issue, along with any other documents in its possession that are responsive to the above-referenced discovery requests, on or before **Wednesday, January 12, 2011,** (ii) that JCI is granted leave to amend its pre-trial exhibit list to include the materials produced by Lear, and (iii) that JCI is granted leave to provide these materials to its damages expert, with any supplemental report to be provided to Lear on or before **Tuesday, January 18, 2011.**  To the extent, however, that JCI seeks leave to depose Lear's damages expert, Mr. Gemini, regarding these documents, the Court declines to grant this request, and instead concludes that JCI will have a sufficient opportunity to question Mr. Gemini regarding these documents on cross-examination at trial.[4]

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' October 20, 2010 motion to compel production of newly discovered Lear documents (docket #191) is

---

[4]In a letter sent to the Court in response to the letter from Lear's counsel that accompanied Lear's submission of the documents at issue for *in camera* review, JCI's counsel argues that JCI has been considerably prejudiced by Lear's failure to produce these document until just before trial, and he proposes that the issues of liability and damages be bifurcated at the forthcoming trial in order to alleviate this prejudice.  The Court declines to bifurcate the trial as proposed by JCI and its counsel, where only a handful of documents are being produced, and where these documents implicate only a single, discrete issue that JCI and its counsel can readily address in their presentation at trial.

8

GRANTED, in accordance with the rulings in this opinion and order.


                         s/Gerald E. Rosen
                         Chief Judge, United States District Court

Dated:  January 10, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 10, 2011, by electronic and/or ordinary mail.

                         s/Ruth A. Gunther
                         Case Manager